HASKINS, Respondent, vs. KENNEDY, Appellant.

*March 20 — April 9, 1891.*

*Construction of contract: Overpayment.*

In part payment for logs contracted to be delivered by H. to K. the latter agreed to furnish H. with such supplies as were needed to get out the logs, and retain enough of the purchase money to pay therefor, and "when the logs shall be so cut and banked," to pay for them at

the specified rate. Subsequently H. sublet to O'G. the cutting and logging of part of the lands specified in his contract with K., "the terms of payment for such logging to be the same as specified in" said contract between H. and K., and the latter to pay directly to O'G. for such logging according to such contract. *Held,* that K. was not authorized to make advances or payments to O'G. any faster than he banked the logs, and that H. was not liable to K. for any overpayment by way of supplies furnished by him to O'G. before delivery of the logs.

APPEAL from the Circuit Court for *Ashland* County.

In July, 1887, the parties entered into a contract in writing, in and by which the plaintiff agreed to sell to the defendant 8,000,000 feet of white pine saw-logs, more or less, to be cut during the logging season of 1887–88, on lands owned or controlled by plaintiff, and to deliver the same to defendant on the banks of Lake Superior, and certain tributaries thereto. The stipulation for payment for such logs is as follows: " The said *Kennedy* agrees to furnish the said party of the first part [the plaintiff] such supplies as may be needed to get out such logs, and to hold sufficient of said purchase money to pay for said supplies, and for the labor of banking said logs, less the above provisions. One half the purchase money shall be paid for each 100,000 feet delivered on the bank. Whatever balance is due the party of the first part shall be paid him in July, 1888. The said logs to be paid for at the rate of $6.25 per 1,000 feet when so cut, banked, and delivered as above stated."

In October, 1887, plaintiff and one O'Gara entered into a contract in writing, in and by which the latter agreed to cut and bank for plaintiff a portion of the logs thus sold defendant, on certain land specified therein, at a stipulated price per 1,000 feet. It is further stipulated therein that the terms of payment shall be the same as in the above contract between plaintiff and defendant; and, further, that "said *D. A. Kennedy* shall pay directly to the party of the second part [O'Gara] the aforesaid consideration for

said logging and banking, at the times and in the manner indicated by the contract heretofore referred to by and between the party of the first part [the plaintiff] and *D. A. Kennedy*, and so much of said contract as refers to the payment of said logging is hereby made a part of this agreement."

Plaintiff delivered the contract between himself and O'Gara to the defendant, and requested him to furnish O'Gara with supplies as therein required, and defendant agreed to do so. Under this agreement defendant furnished O'Gara, during the logging season of 1887–8, supplies to the amount of $4,367.78. The logs O'Gara cut and banked under his contract with plaintiff amounted only to $3,503.08. Thus defendant overpaid O'Gara $864.70.

July 21, 1888, defendant delivered to plaintiff his account of such logging transactions, as contained in defendant's books, showing a balance in favor of plaintiff of $17,298.30. This account commences with a balance of $48,095.59 against plaintiff, contained in another account rendered plaintiff May 11, 1888. In the latter account plaintiff is charged with $3,503.08, paid to O'Gara, according to plaintiff's statement of the amount of logs put in by O'Gara. Neither account includes the $864.70 thus overpaid O'Gara.

November 1, 1888, another account was furnished plaintiff by defendant, commencing with the item of $17,298.30, being the balance in favor of plaintiff in the account of July 21st. It includes charges against plaintiff accruing after July 21st, amounting to $7,990.25. The balance found due plaintiff in that account was $9,308.50, of which $9,000 was then paid plaintiff. Defendant offered to pay the remaining $308.50, but plaintiff desired him to retain it, and he did so. This account of November 1, 1888, contains a charge of $864.70 against plaintiff, being the amount thus overpaid O'Gara.

The foregoing facts are undisputed. Whether the plaint-

Haskins vs. Kennedy.

iff is liable to the defendant for the amount of this overpayment is the only question in controversy in this action.

The complaint is for the balance stated in the account of July 21st to be due the plaintiff, less subsequent payments, excluding therefrom the charge for the amount overpaid O'Gara. It goes upon the theory that such account is an account stated by the parties, and binding upon both of them. The answer denies that the account of July 21st was stated by the parties, and alleges that it was made merely to show how plaintiff's accounts stood on defendant's books at the time, so that plaintiff might determine whether it was correct or not, as far as it went; also that similar accounts were furnished plaintiff at various times before and after July 21st, for the same purpose. The answer also affirms the accuracy of the account of November 1, 1888, containing the charge of the disputed item of $864.70.

The court directed a verdict for the plaintiff for the amount appearing to be due him by the account of November 1, after striking therefrom the charge of $864.70. A motion by defendant for a new trial was denied, and judgment entered pursuant to the verdict. The defendant appeals from the judgment.

For the appellant there was a brief by *Lamoreux, Gleason, Shea & Wright*, and oral argument by *E. F. Gleason*. They contended that the statement upon which plaintiff bases his action, as being an account stated, though not objected to by plaintiff, was not binding as such an account, because the parties never got together and examined it, and agreed upon the balance. 2 Wharton on Cont. 774; Abbott's Trial Evidence, 458; *Zacarino v. Pallotti*, 49 Conn. 36; *McNeel v. Baker*, 6 W. Va. 153; *Volkening v. De Graaff*, 81 N. Y. 268; *Stebbins v. Niles*, 25 Miss. 267; *McKinster v. Hitchcock*, 19 Neb. 100. The plaintiff received other and different statements, both before and after that one, and

has no right to choose which he will consider an account stated. He knew this was not so intended. One provision of plaintiff's contract with O'Gara was intended to authorize the defendant to furnish the latter with supplies with reference to the amount of land to be logged by him, and they were so furnished by his orders, the over supply being caused by plaintiff's failure to furnish all the land agreed.

For the respondent there was a brief by *Tomkins, Merrill & Smith,* and oral argument by *W. M. Tomkins.* They argued that the statement of account rendered by defendant to plaintiff, with a request to examine, and if any explanation was needed to notify defendant, was an account stated, which the plaintiff has not attempted to surcharge or dispute. Plaintiff's contract with O'Gara was but a limited order to pay him only the amount due him.

LYON, J. The only question to be determined on this appeal is, should the defendant, in his account with the plaintiff, be allowed the .charge of $864.70, being the amount paid O'Gara over and above the contract price of the logs cut and banked by him? The defendant testified that advances for supplies are sometimes made to loggers early in the logging season, and before any logs are banked, to the amount of seven eighths of the contract price for the work. This is undoubtedly a correct statement, for in a large proportion of the numerous logging cases which reach this court it appears that the loggers have little capital, and would be unable to execute their contracts were not liberal advances made to them early in their operations, when they must procure teams, tools, and equipage for the business, involving their heaviest expenditures. But these circumstances do not, of themselves, justify the defendant in overpaying O'Gara. Whether he could do so, and bind the plaintiff by such overpayment, must depend entirely upon the contracts under which such payments to O'Gara were made. If de-

fendant has a contract with plaintiff which authorizes such overpayments, the plaintiff must bear the loss; but, if the defendant has no such contract, then he must bear it. This brings us to consider the respective contracts between these parties and plaintiff and O'Gara, the terms of which are sufficiently set out in the foregoing statement of the case.

Manifestly, the defendant had no authority to make advances to O'Gara beyond what the plaintiff was bound to make under his contract with O'Gara. The terms of that contract, with respect to advances and payments on the same, are contained in the contract between these parties, which, by reference, are incorporated in the O'Gara contract. By the latter contract, therefore, plaintiff bound himself to furnish O'Gara needed supplies to get out the logs, retaining the cost thereof out of the sums earned by O'Gara. He also bound himself to pay one half the contract price for the work for each 100,000 feet delivered on the banks of the designated streams. Any advances so made by him were a part of each payment. He further bound himself to pay, in July, 1888, any balance in favor of O'Gara. Then comes a provision covering the whole subject of payments, to the effect that the work was to be paid for at the specified rate when the logs should be so cut and banked. The only reasonable construction of this clause, and of the whole contract, is that O'Gara had no claim against plaintiff, whether by way of advances or otherwise, until the logs were cut and banked according to the contract, with the qualification that for each 100,000 feet thereof so cut and banked he was entitled to the stipulated compensation. Any other construction would, we think, do violence to the language of the contract, and the clear intention of the parties thereto.

Another feature of the case may here be noticed. It appeared that some of the timber (about 100,000 feet) included in the O'Gara contract was stolen before O'Gara was ready

to cut it.  He thus lost the benefit of so much of his contract. The defendant testified that he made advances to O'Gara on the faith of his getting out all the timber covered by his contract, and especially the stolen timber, which was favorably located near the river, and could be banked cheaply, and that he made no more advances to O'Gara than were required to enable him to fulfill his contract with plaintiff. But, under the construction we have given the contract, these facts are immaterial.  Had defendant made advances no faster than O'Gara banked the logs, there could have been no overpayment.

We see no escape from the conclusion that defendant made such overpayments without authority from plaintiff to do so, and hence that he has no valid claim therefor against the plaintiff.  It is of no importance, therefore, whether the parties stated the account of July 21st, and thus bound themselves by it, or not.  In either event the result is the same.  The material facts being undisputed, and the case turning entirely upon the construction of the contract, the court properly directed a verdict for the plaintiff.

*By the Court.*— Judgment affirmed.

